# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN ERICSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-2087-DDC |
| LANDERS MCLARTY OLATHE KS, LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the court upon Plaintiff's Motion for Leave to Amend Out of Time and Memorandum in Support (ECF No. 24). Defendant opposes the motion on the grounds that it is untimely, made in bad faith, and that the proposed amendments are futile. For the reasons stated below, the court denies plaintiff's motion as untimely and therefore declines to consider bad faith or futility.

**I.     Background**

This case involves claims arising from Plaintiff John Ericson's interactions with Defendant Landers McLarty Olathe KS, LLC (doing business as Olathe Dodge Chrysler Jeep Ram) involving the purchase and financing of a 2009 Honda Civic. Plaintiff asserts claims against defendant for breach of contract; violations of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623, *et seq.*; violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*; and fraud. Highly summarized, plaintiff alleges that defendant engaged in a "yo-yo scam" involving the purchase of the vehicle. He contends that he was originally approved for financing based on his estimated income but that defendant attempted to revoke the original deal in order to force plaintiff to pay more. Defendant has asserted counterclaims for replevin, conversion, unjust enrichment, breach of contract, and fraud.

Plaintiff filed this action on February 9, 2017, and the court entered a scheduling order setting forth case management deadlines on June 1, 2017. Among other things, the scheduling order provides that all motions to amend the pleadings must be filed by June 23, 2017. Plaintiff filed this motion on September 5, 2017. The proposed amended complaint asserts new factual allegations, two new substantive claims under the KCPA, and an additional substantive fraud claim.

Some of the factual allegations pled in the proposed amended complaint differ significantly from those pled in the complaint. The complaint alleges that when plaintiff was attempting to purchase the vehicle, he informed defendant that he estimated his monthly income was $3,000, as he did not have his paystubs with him.[1] In plaintiff's proposed amended complaint, plaintiff now alleges that he was unemployed at the time he attempted to purchase the vehicle.[2] He alleges that he informed employee Elizabeth McMullen of this fact, told her he received monthly income for house-sitting, but also clarified that he did not consider this to be income because he would spend all of the funds caring for the home and paying his own expenses.[3] Plaintiff now alleges that he continued to reiterate to Ms. McMullen that he was unemployed, but she told him that "she would be able to get the needed documents—the paystubs—but that [plaintiff] would need to meet with someone."[4] The proposed amended complaint now alleges that Ms. McMullen did not give plaintiff the name of this individual but described her as "a shorter African-American woman" and arranged for a meeting to take place

---

[1] Compl. at ¶ 11, ECF NO. 1.

[2] Pl.'s First Am. Compl. at ¶ 12, ECF No. 24-1.

[3] *Id.* at ¶ 13.

[4] *Id.* at ¶ 23.

between plaintiff and this woman at a Wal-Mart a block away from the house where plaintiff was house-sitting.[5] The proposed amended complaint alleges that Ms. McMullen had indicated there was "some sort of 'private contractor' deal being worked out" and apparently gave plaintiff the impression that this was a service defendant would provide in certain circumstances to cash customers.[6] According to the proposed amended complaint, plaintiff and the woman met in the Wal-Mart parking lot, and the woman provided plaintiff with an unsealed white envelope and then walked away without speaking to him.[7] Plaintiff alleges that he then delivered the envelope to defendant.[8] In subsequent text messages from Ms. McMullen to plaintiff, she told plaintiff that the "'shit' provided by 'renetta' was being rejected."[9] Plaintiff has included screen shots of the text messages in his proposed amended complaint, and the context would suggest that Ms. McMullen was referring to difficulties obtaining financing for plaintiff.

The parties engaged in mediation on August 22, 2017.[10] According to defendant, it was at mediation where defendant presented copies of plaintiff's paystubs containing irregularities. Defendant believes the irregularities demonstrate that the paystubs were fabricated. Plaintiff contends that the two sets of paystubs containing conflicting information was what has led him

---

[5] *Id.* at ¶ 24.

[6] *Id.* at ¶ 25.

[7] *Id.* at ¶ 27.

[8] *Id.* ¶ 28.

[9] *Id.* at ¶ 40.

[10] D. Kan. Rule 16.3(i) provides that the parties, counsel, the mediator, and any other individuals involved with mediation "must treat as 'confidential information' the contents of written mediation statements, anything that happened or was said, any position taken, and any view of the merits of the case formed by any participant in connection with mediation." Both plaintiff and defendant have included significant details regarding paystubs presented at mediation, and so the court also makes reference to the paystubs in this order. The paystubs, however, are documents that likely would have been produced in discovery and are not the type of information that D. Kan. Rule 16.3(i) is aimed at shielding.

to seek to amend. He states that he now believes the documents in the white envelope were a second set of paystubs but that this information was not apparent until plaintiff viewed the second set of paystubs at mediation. In other words, defendant presented a second set of paystubs, which plaintiff contends he did not provide and which plaintiff was unaware of prior to mediation.

## II. Discussion

When the deadline for amending the pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking a modification [of the scheduling order] under Rule 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[11] Because plaintiff did not file his motion until after the scheduling order deadline, the court will apply the two-step analysis in determining whether to allow the amended pleading.

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[12] The good-cause standard considers the diligence of the party seeking to amend.[13] To establish good cause, the moving party must show that despite due diligence, it could not have reasonably met the deadline for amendments to the pleadings.[14] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[15] Similarly,

---

[11] *Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1240 (10th Cir. 2014).

[12] Similarly, the scheduling order in this case also provides that it "shall not be modified except by leave of the court upon a showing of good cause." Scheduling Order at 11, ECF No. 17.

[13] *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

[14] *Carefusion 213 LLC v. Prof'l Disposables, Inc.*, No. 09-2616-KHV, 2010 WL 4004874, at *3 (D. Kan. Oct. 22, 2010).

[15] *Deghand*, 904 F. Supp. at 1221.

lack of prejudice to the nonmovant does not constitute good cause.[16] The party seeking an extension is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline.[17]

In his opening brief, plaintiff fails to address the good-cause standard even though he recognizes that his motion is untimely under the scheduling order. He does state, however, that during mediation, "new information came to light which was previously known to counsel."[18] But he fails to detail any of this supposed new information. In his reply brief, plaintiff offers a confusing elaboration regarding the circumstances leading to the motion to amend. He argues that he had in his possession a "piece of the puzzle"—the text messages between he and Ms. McMullen, but presumably also the other information concerning his own interactions with defendant's employees. But he states that it was the two sets of paystubs that constitutes new information previously unknown to him.

The vast majority of factual allegations pled in the amended complaint, however, are based on information in plaintiff's possession that appears could have been pled from the outset. For example, plaintiff is now attempting to plead that he did not consider himself to be employed at the time he was attempting to purchase the vehicle, that he repeatedly informed one of defendant's employees of this fact, and that at defendant's employee's direction, he met a woman in the Wal-Mart parking lot who gave him an envelope to deliver to defendant.

Even assuming *arguendo* that the paystubs constitute new information or "context" previously unknown to plaintiff, it is information that plaintiff was capable of discovering earlier

---

[16] *Id.*

[17] *Id.*

[18] Pl.'s Mot. for Leave to Amend Out of Time and Mem. in Supp. at 2, ECF No. 24.

had he exercised due diligence. Certainly, the alleged meeting in the Wal-Mart parking lot was known to plaintiff at the time he filed suit. Similarly, the text messages between plaintiff and Ms. McMullen were also in plaintiff's possession. This court has previously held that a plaintiff does not meet the good-cause standard for a belated amendment when it has in its possession "evidence that should have led it to the information that the proposed claim is based on."[19] Even if plaintiff had no knowledge of who "Renetta" was or to what documents or information Ms. McMullen was referring in her text messages, the unorthodox Wal-Mart meeting alone should have prompted plaintiff to explore all avenues of discovery to learn more about the exchange. Even a simple request for production seeking all documents relating to plaintiff's attempts to obtain financing likely would have unearthed the existence of the paystubs within the period for amendments.

Although plaintiff states that the parties had granted each other extensions of time to respond to discovery requests, the parties never sought an extension of the deadline for amendments to pleadings, and discovery was never formally stayed. For these reasons, the court finds that plaintiff has failed to demonstrate good cause under Rule 16(b)(4). Because plaintiff has failed to demonstrate good cause, the court need not consider whether the amendment should be allowed under Rule 15.[20] Plaintiff's motion for leave to amend is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend Out of Time and Memorandum in Support (ECF No. 24) is denied as untimely.

---

[19] *Hans v. Bd. of Comm'rs of Shawnee Cty., Kan.*, No. 16-4117-DDC, 2017 WL 3781837, at *2 (D. Kan. Aug. 31, 2017) (quoting *Five Rivers Ranch Cattle Feeding, LLC v. KLA Env't Servs. Inc.,* 08-2185-EFM, 2010 WL 2609426, at *2 (D. Kan. June 10, 2010)).

[20] *See Gorsuch*, 771 F.3d at 1240 (concluding that the court need not consider Rule 15 when it determines that the moving party has failed to show good cause under Rule 16).

**IT IS SO ORDERED.**

Dated October 13, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge